La Grand Industrial Supply Company, Petitioner, *v.* United States of America, Respondent.

Docket No. 659–R.  Filed August 10, 1954.

*Randall S. Jones, Esq.*, for the petitioner.
*Ralph G. Cornell, Esq.*, for the respondent.

1026

OPINION.

ARUNDELL, *Judge:* The respondent has determined by a unilateral order that the petitioner, the La Grand Industrial Supply Company, received excessive profits for the year 1943 in the amount of not less than $19,000 [2] after allowing a proportional part of a salary allowance cf $20,000 for the services of the owner and sole proprietor, John La Grand.

Both the salary allowance and the determination of excessive profits are challenged by the petitioner in the proceeding before us. Petitioner also contends that the respondent has erroneously included in the renegotiable portion of the business a very substantial amount attributable to sales of standard commercial articles which should be exempt from renegotiation.

Section 403 (a) (7), the Renegotiation Act of 1943,[3] provides generally that a "standard commercial article" is one (a) which is identical with articles manufactured and sold for prewar civilian use; (b) for which there exists a competing product; and (c) for which

---

[2] The amount. after allowance for State taxes, is $18,811.66.

[3] SEC. 403 (a). For the purposes of this section—

\* \* \* \* \* \*

(7) The term "standard commercial article" means an article—

(A) which is identical in every material respect with an article which was manufactured and sold, and in general civilian, industrial, or commercial use prior to January 1, 1940,

(B) which is identical in every material respect with an article which is manufactured and sold, as a competitive product, by more than one manufacturer, or which is an article of the same kind and having the same use or uses as an article manufactured and sold, as a competitive product, by more than one manufacturer, and

(C) for which a maximum price has been established and is in effect under the Emergency Price Control Act of 1942, as amended, or under the Act of October 2, 1942, entitled "An Act to amend the Emergency Price Control Act of 1942, to aid in preventing inflation, and for other purposes," or which is sold at a price not in excess of the January 1, 1941, selling price.

a maximum price had been fixed under the Emergency Price Control Act. The Renegotiation Act further provides in section 403 (i) (4) (D) that the War Contracts Price Adjustment Board may, in its discretion, exempt sales of standard commercial articles from renegotiation, "if, in the opinion of the Board, competitive conditions affecting the sale of such article[s] are such as will reasonably protect the Government against excessive prices."

Thus, under the Renegotiation Act, contracts for the sale of commercial articles were not automatically or mandatorily exempt from renegotiation. They were exempt if the War Contracts Price Adjustment Board exempted them and, concededly, the Board did not exempt contracts for the sale of the products here involved from renegotiation.

But the petitioner contends that this Court has the authority to exempt the proceeds of the sales of these articles from renegotiation. He argues that, under section 403 (e) (1) of the Renegotiation Act,

A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo.

The petitioner contends that under the above authority this Court may exercise the discretion initially reposed in the War Contracts Price Adjustment Board and exempt from renegotiation the sales of the standard commercial articles which the Board did not exempt.

It should be observed that the petitioner here did not specifically request the War Contracts Price Adjustment Board to exempt the sales of his products from renegotiation but, in the view we take of the case, this makes no difference. The Board, in considering its power to exempt standard commercial articles, had ruled that it would not exempt individual contracts for furnishing these articles, and such exemptions as would be granted would be by types or classes of articles. (Renegotiation Regulations dated March 24, 1944, as revised, secs. 354.2 and 845.)

The respondent contends that the authority to exempt contracts for the sale of standard commercial articles from renegotiation rests exclusively in the discretion of the War Contracts Price Adjustment Board and this Court has no authority to review the Board's action, or lack of action, in granting or denying permissive exemptions from renegotiation.

Assuming, without deciding, that this Court has the authority to review the discretionary authority of the Board to exempt standard commercial articles from renegotiation, and that the petitioner's products were such articles, we think that the petitioner has not shown that competitive conditions were such in his business as would reasonably protect against excessive prices and excessive profits. The

only conclusions which the record reasonably supports are that the petitioner did not gouge his customers, that at times he charged them less than the controlled prices fixed for his merchandise by O. P. A., and that he did pass on at times to his customers certain savings resulting from the volume of his business. However, more than this is necessary to justify a conclusion that competitive conditions surrounding this business were such that the Government was reasonably protected against excessive prices. Cf. *Moening* v. *War Contracts Adjustment Board*, 14 T. C. 589.

Turning next to the remaining questions, we think that the record clearly shows that the principal reason for petitioner's large profits in 1943 was the very great demand for his merchandise which was inspired by the war production orders of his customers. During this period he had no difficulty in selling his supplies. The problem was to keep his bins and shelves full of merchandise. Consequently, there was little risk in his operation. Much of the merchandise he sold never even passed through his warehouse but was delivered directly to the customer in carload lots with the petitioner merely arranging the details of the delivery and handling the invoices.

We are not convinced that petitioner's business was a complex or intricate operation. It did not involve manufacturing or fabricating; it was a simple wholesaling operation made easier by an unusual demand. No doubt petitioner did work hard during this year but many other patriotic citizens did likewise. We have no doubt that the petitioner was required by the demands of his business to work long hours and often on weekends and recognition of his efforts should be reflected in the salary allowance that should be made in determining whether the petitioner realized excessive profits.

Testimony of several witnesses was offered to establish what would be an appropriate salary for petitioner's services during 1943. After carefully weighing this testimony and all the facts, we think that $25,000 would be a reasonable salary allowance to be taken into consideration in determining whether excessive profits were realized in 1943.[4]

All the factors which bear on the reasonableness of the profits which petitioner realized from the renegotiable portion of his business have been weighed by the Court in determining whether petitioner received excessive profits. We have considered particularly that the extraordinary wartime demand for petitioner's merchandise resulted in a rapid turnover of his inventory, that such a condition diminished substantially the normal risks in a mercantile op-

---

[4] Of course, only that part of the gross salary of $25,000 which is equal to the ratio between renegotiable sales and total sales for the year 1943 is taken into consideration in determining whether excessive profits were realized from renegotiable sales.

eration and enabled the petitioner to do a large volume of business with comparatively little capital. In the light of these circumstances, we have found that petitioner's profits were excessive in the amount of $15,000.

*An order in accordance with the Opinion will be entered.*